UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

PATRICK ALFORD, SR. and                                No. CV11-1583

J.A, a minor, by J.A. and her father and natural
and legal guardian, PATRICK ALFORD, SR.,

                                    Plaintiffs,         **AMENDED**
                                                        **COMPLAINT AND**
              -against-                                 **JURY DEMAND**

OMAR LOFTON, individually and in his capacity
as a Child Protective Specialist for Administration for
Children's Services, and

KATHLEEN BENITEZ, individually and in her capacity
as a Case Planner for Administration for Children's
Services, and

MARIA PENA, individually and in her capacity
as a Supervisor/ Manager of Child Protective Specialists for the
Administration for Children's Services, and

ROBERT SALEMI, individually and in his capacity
as a Supervisor of Child Protective Specialists for the
Administration for Children's Services, and

NATALIA ROSADO, individually and in her capacity
as a Child Protective Specialist for Administration for
Children's Services, and

ZANETTE SARGEANT individually and in her capacity
as a Child Evaluation Specialist for Administration for
Children's Services, and

SHARICE SCOTT, individually and in her capacity
as a Child Protective Specialist for Administration for
Children's Services, and

EMMANUEL OKON, individually and in his capacity
as a Supervisor of Child Protective Specialists for the
Administration for Children's Services, and

JAKE NIXON, JR., , individually and in his capacity
as a Supervisor of Child Protective Specialists for the
Administration for Children's Services, and

1

CARLINE ANDERSON, individually and in her
Capacity as a Case Worker for defendant ST. VINCENTS
SERVICES, INCORPORATED, and

ZOILA VILLALTA, individually and in her capacity
as a Supervisor of Case Workers for defendant,
ST. VINCENT SERVICES, INCORPORATED, and

LIBRADA MORAN, individually and in her capacity
as a Foster Mother for defendant, ST. VINCENT
SERVICES, INCORPORATED, and

THE CITY OF NEW YORK, and

ST. VINCENT'S SERVICES, INCORPORTED,

                                        Defendants.
_____

## PRELIMINARY STATEMENT

1.  This is a civil rights action brought by Plaintiff, PATRICK ALFORD, SR., both

    individually, and as the father and natural and legal guardian of co-plaintiff, J.A.,

    an infant, and by J.A., individually, which seeks damages and redress for the

    defendants violation, under color of state law or action, of the rights of the

    plaintiffs secured by the Civil Rights Act of 1866 and 1871, 42 U.S.C. 1981 and

    1983, the Fourth Amendment, and the Equal Protection and Due Process Clauses

    of the Fourteenth Amendment to the United States Constitution and/or the laws

    and Constitution of the State of New York.

## JURISDICTION

2.  This is an action seeking damages for the violation of Plaintiffs Constitutional and

    Civil Rights.  This Court has jurisdiction over the subject matter of this action

    pursuant to 28 U.S. C. § 1331 and 28 U.S.C. 1343 (3).  Plaintiff's further invokes

2

the pendant jurisdiction of this Court pursuant to 28 U.S.C. 1367(a) to hear and adjudicate state law claims which arise from and/or form part of the same case or controversy.  Claims for declaratory and/or injunctive relief are authorized by 28 U.S. C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

3.  The amount of damages in controversy exceeds Seventy Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

4.  The Plaintiffs demand a trial by jury on each and every claim pleaded herein.

## VENUE

5.  Venue in the United State District Court for the Eastern District of New York is proper under 28 U.S.C. §1391 (a), (b) and (c) because as the facts and circumstances giving rise to this action took place within the jurisdictional limits of the Eastern District of New York and plaintiffs reside within the jurisdictional limits of the Eastern District of New York.

## PARTIES

*Plaintiff PATRICK ALFORD, SR.*

6.  At all times relevant hereto Plaintiff, PATRICK ALFORD, SR., was, and is, an adult individual and a United States Citizen who resides at 1138 Blake Avenue, Brooklyn, New York, New York 11208.

7.  At all times relevant hereto Plaintiff, PATRICK ALFORD, SR., was, and is, the father and natural and legal guardian of P.A., JR., an infant born November 28th, 2002.

8.  At all times relevant hereto Plaintiff, PATRICK ALFORD, SR., was, and is, the father and natural and legal guardian of co-plaintiff, J.A., an infant.

3

*Plaintiff J.A.*

9. At all times relevant hereto Plaintiff, J.A., was a minor, having been born on April 9th, 2005, and is a United States citizen and resident of the United States who resided at 80 Van Buren Street, Staten Island, New York.

10. The plaintiff, J.A. is the daughter of plaintiff PATRICK ALFORD, SR. and the biological sister of the infant P.A., JR.

*Defendant OMAR LOFTON*

11. At all times relevant hereto defendant, OMAR LOFTON, was employed by defendant THE CITY OF NEW YORK, by and through the Administration for Children's Services.

12. At all times relevant hereto defendant OMAR LOFTON was employed as a Child Protective Specialist.

13. At all times relevant hereto defendant, OMAR LOFTON, was acting under color of state law and is herein sued in his individual capacity and in his capacity as a Child Protective Specialist for the Administration for Children's Services.

*Defendant KATHLEEN BENITEZ*

14. At all times relevant hereto defendant, KATHLEEN BENITEZ, was employed by defendant THE CITY OF NEW YORK, by and/or through the Administration for Children's Services.

15. At all times relevant hereto defendant, KATHLEEN BENITEZ, was employed as a Case Planner and/or Child Protective Specialist.

16. At all times relevant hereto, defendant, KATHLEEN BENITEZ, was acting under color of state law and is herein sued in her individual capacity and in her capacity as a Case Planner and/or Child Protective Specialist for the Administration for Children's Services.

### Defendant MARIA PENA

17. At all times relevant hereto defendant, MARIA PENA, was employed by defendant, THE CITY OF NEW YORK, by and/or through the Administration for Children's Services.

18. At all times relevant hereto defendant, MARIA PENA, was employed as a Child Protective Specialist Supervisor.

19. At all times relevant hereto defendant, MARIA PENA, was acting under color of state law and is herein sued in her individual capacity and in his capacity as a Child Protective Specialist Supervisor for the Administration for Children's Services.

### Defendant ROBERT SALEMI

20. At all times relevant hereto defendant, ROBERT SALEMI, was employed by defendant, THE CITY OF NEW YORK, by and/or through the Administration for Children's Services.

21. At all times relevant hereto defendant ROBERT SALEMI, was employed as a Child Protective Specialist Supervisor.

22. At all times relevant hereto defendant, ROBERT SALEMI, was acting under color of state law and is herein sued in his individual capacity and in his capacity

as a Child Protective Specialist Supervisor for the Administration for Children's Services.

*Defendant NATALIA ROSATO*

23. At all times relevant hereto defendant, NATALIA ROSADO, was employed by THE CITY OF NEW YORK, by and/or through the Administration for Children's Services.

24. At all times relevant hereto, defendant NATALIA ROSATO, was employed as a Child Protective Specialist.

25. At all times relevant hereto, defendant, NATALIA ROSATO, acted under color of state law and is herein sued in her individual capacity and in her capacity as a Child Protective Specialist for the Administration for Children's Services.

*Defendant ZANETTE SARGEANT*

26. At all times relevant hereto defendant, ZANETTE SARGEANT was employed by THE CITY OF NEW YORK, by and/or through the Administration for Children's Services.

27. At all times relevant hereto defendant, ZANETTE SARGEANT was employed by ST. VINCENTS SERVICES, INCORPORATED.

28. At all times relevant hereto defendant, ZANETTE SARGEANT, was employed as a Child Evaluation Specialist.

29. At all times relevant hereto, defendant, ZANETTE SARGEANT, acted under color of state law and is herein sued in her individual capacity and in her capacity as a Child Evaluation Specialist.

*Defendant SHARICE SCOTT*

30. At all times relevant hereto defendant, SHARICE SCOTT, was employed by THE CITY OF NEW YORK, by and/or through the Administration for Children's Services.

31. At all times relevant hereto defendant, SHARICE SCOTT, was employed by ST. VINCENTS SERVICES, INCORPORATED.

32. At all times relevant hereto defendant, SHARICE SCOTT, was employed as a Child Protective Specialist.

33. At all times relevant hereto, defendant, SHARICE SCOTT, acted under color of state law and is herein sued in her individual capacity and in her capacity as a Child Protective Specialist.

*Defendant EMMANUEL OKRON*

34. At all times relevant hereto defendant, EMMANUEL OKON, was employed by THE CITY OF NEW YORK, by and/or through the Administration for Children's Services.

35. At all times relevant hereto defendant, EMMANUEL OKON, was employed by ST. VINCENTS SERVICES.

36. At all times relevant hereto defendant, EMMANUEL OKON, was employed as a Child Protective Specialist Supervisor.

37. At all times relevant hereto, defendant, EMMANUEL OKON, acted under color of state law and is herein sued in his individual capacity and in his capacity as a Child Protective Specialist.

*Defendant JAKE  NIXON, JR.*

38. At all times relevant hereto defendant, JAKE NIXON, JR., was employed by THE

    CITY OF NEW YORK, by and/or through the Administration for Children's

    Services.

39. At all times relevant hereto defendant, JAKE NIXON, JR., was employed by ST.

    VINCENTS SERVICES, INCORPORATED.

40. At all times relevant hereto defendant, JAKE NIXON, JR., was employed as a

    Child Protective Specialist.

41. At all times relevant hereto, defendant, JAKE NIXON, JR., acted under color of

    state law and is herein sued in her individual capacity and in her capacity as a

    Child Protective Specialist.

*Defendant CARLINE ANDERSON*

42. At all times relevant hereto defendant, CARLINE ANDERSON, was employed

    by defendant, ST. VINCENT SERVICES, INCORPORATED.

43. At all times relevant hereto defendant, CARLINE ANDERSON, was employed as

    a Case Worker.

44. At all times relevant hereto defendant, CARLINE ANDERSON, was acting under

    color of state law and was a state actor for Section 1983 purposes by virtue of her

    employment as a Case Worker for defendant ST. VINCENT SERVICES,

    INCORPORATED.

45. At all times relevant hereto defendant CARLINE ANDERSON was supervised by

    defendant ZOILLA VILLALTA.

*Defendant ZOILLA VILLALTA*

46. At all times relevant hereto defendant, ZOILA VILLALTA, was employed by defendant, ST. VINCENT SERVICES, INCORPORATED.

47. At all times relevant hereto defendant, ZOILA VILLALTA, was employed as a Supervisor of Case Workers.

48. At all times relevant hereto defendant ZOILLA VILLALTA was the supervisor of defendant. CARLINE ANDERSON.

49. At all times relevant hereto defendant, ZOILA VILLALTA, was acting under color of state law and was a state actor for Section 1983 purposes by virtue of her employment as a Supervisor for defendant ST. VINCENT SERVICES, INCORPORATED.

*Defendant LIBRADA MORAN*

50. At all times relevant hereto, defendant, LIBRADA MORAN , was an individual residing at 130 Vandalia Avenue, 11B, Brooklyn, New York 11239.

51. At all times relevant hereto defendant, LIBRADA MORAN, was a foster care mother.

52. At all times relevant hereto defendant, LIBRADA MORAN, was employed by defendant ST. VINCENTS SERVICES, INCORPORATED.

53. At all times relevant hereto defendant LIBRADA MORAN, provided foster care under the authorization, supervision, management and/or control of defendant, ST. VINCENTS SERVICES, INCORPORATED .

54. At all times relevant hereto defendant LIBRADA MORAN, provided foster care under the authorization, supervision, management and/or control of defendant, THE CITY OF NEW YORK.

55. At all times relevant hereto defendant LIBRADA MORAN was the foster care mother for P.A., JR.

56. At all times relevant hereto defendant LIBRADA MORAN was the foster care mother for J.A.

*Defendant THE CITY OF NEW YORK*

57. At all times relevant hereto Defendant, THE CITY OF NEW YORK, was, and is, a municipal entity created, organized, and existing pursuant to the laws of the State of New York.

58. At all times relevant hereto defendant, THE CITY OF NEW YORK, did maintain the Administration for Children's Services.

59. At all times relevant hereto defendant, THE CITY OF NEW YORK, was authorized and required by law to maintain the Administration for Children's Services.

60. That the Administration for Children's Services acts as the agent for THE CITY OF NEW YORK pursuant to the Social Services Law of New York and the Family Court Act.

61. That defendant THE CITY OF NEW YORK, by and through the Administration for Children's Services, are charged with certain duties and responsibilities under the Social Services Law and the Family Court Act, which include but are not

limited to the care and protection of children within its jurisdiction who are at risk or in danger of being abuse and/or neglected.

62. THE CITY OF NEW YORK, by and through the Administration for Children's Services, acts on allegations of abuse and neglect regarding children within its jurisdiction.

63. THE CITY OF NEW YORK, by and through the Administration for Children's Services, is empowered to, and does, act as a child protective agency for children within its jurisdiction.

64. THE CITY OF NEW YORK, by and through the Administration for Children's Services, employs caseworkers, supervisors, and others, in furtherance of its duties and responsibilities as a child protective agency.

65. The individuals named as defendants herein were so employed, contracted, or otherwise engaged by THE CITY OF NEW YORK, by and through the Administration for Children's Services.

66. Defendant, ST. VINCENT'S SERVICES, INCORPORATED, its agents, servants and/or employees, including the individuals named as defendants herein, were so employed, contracted, or otherwise engaged by THE CITY OF NEW YORK, by and through the Administration for Children's Services.

67. THE CITY OF NEW YORK, by and through the Administration for Children's Services, contracted with defendant ST. VINCENT'S SERVICES, INCORPORATED, in furtherance of its duties and responsibilities as a child protective agency.

11

68. That the CITY OF NEW YORK, by and through the Administration for Children's Services, engages in the removal and placement of children who are suspected of being abused and/or neglected and/ or in danger of being abused or neglected.

69. That the CITY OF NEW YORK, by and through the Administration for Children's Services, contracts with ST. VINCENT'S SERVICES, INCORPORATED to act as its agent with regard to providing foster care placement of said children.

70. That THE CITY OF NEW YORK, by and through the Administration for Children's Services, contracts with ST. VINCENT'S SERVICES, INCORPORATED to place, supervise, monitor, manage, oversee and control the foster care placement of said children.

71. That the defendant THE CITY OF NEW YORK, by and through the Administration for Children's Services, acts under color of State Law when engaging in activities in furtherance of their duties and responsibilities under the Social Services Law and the Family Court Act.

*Defendant ST. VINCENT'S SERVICES, INCORPORATED*

72. At all times relevant hereto, defendant, ST. VINCENT'S SERVICES, INCORPORATED, was a domestic corporation, organized and existing pursuant to, and by virtue of, the laws of the State of New York.

73. At all times relevant hereto defendant, ST. VINCENT'S SERVICES, INCORPORATED was a New York limited liability company, organized and

existing pursuant to, and by virtue of, the laws of the State of New York and was authorized to do business in the State of New York.

74. At all times relevant hereto defendant, ST. VINCENT'S SERVICES, INCORPORATED was a New York not-for-profit corporation, organized and existing pursuant to, and by virtue of, the laws of the State of New York, and was authorized to do business in the State of New York.

75. At all times relevant hereto, defendant, ST. VINCENT'S SERVICES, INCORPORATED, was a domestic partnership, proprietorship, or other domestic business entity authorized to do business, and doing business, in the State of New York.

76. At all times relevant hereto defendant, ST. VINCENT'S SERVICES, INCORPORATED, was a foreign corporation, partnership, or other foreign business entity authorized to do business, and doing business, in the State of New York and which derived substantial revenue from the State of New York.

77. At all times relevant hereto defendant, ST. VINCENT'S SERVICES, INCORPORATED, maintained an office within the State of New York, at 66 Boerum Street, Brooklyn, New York 11206.

78. At all times relevant hereto, defendant ST. VINCENT'S SERVICES, INCORPORATED, its agents, employees, and/or servants did commit a tortious act within the State of New York.

79. At all times relevant hereto, defendant, ST. VINCENT'S SERVICES, INCORPORATED was and is a foster care agency duly licensed and existing under, and by virtue of, the laws of the State of New York.

80. At all times relevant hereto defendant, ST. VINCENT'S SERVICES, INCORPORTATED, was an "authorized agency" as defined in the New York Social Services Law section 371.

81. At all times relevant hereto defendant, ST. VINCENT'S SERVICES, INCORPORATED, was under contract with defendant, THE CITY OF NEW YORK, to serve as a foster care agency.

82. By virtue of said contract, defendant ST. VINCENT'S SERVICES, INCORPORATED was also obligated to defend and indemnify defendant THE CITY OF NEW YORK for causes of action arising out of said foster care services and activity.

83. At all times relevant hereto defendant, ST. VINCENT'S SERVICES, INCORPORATED, was authorized to supervise, monitor, manage, oversee and control the placement of children in foster care.

84. That defendant, ST. VINCENT'S SERVICES, INCORPORATED, did supervise, monitor, manage, oversee and/or control the placement of plaintiff J.A.

85. That the defendant, ST. VINCENT'S SERVICES, INCORPORATED, did supervise, monitor, manage, oversee and/or control the placement of P.A., JR.

86. By virtue of the foregoing, defendant ST. VINCENT'S SERVICES, INCORPORATED was, and is, a state actor for Section 1983 purposes.

### FACTUAL ALLEGATIONS

87. Prior to December 29th, 2009 the infant, P.A., JR. was in the care of his natural parents, Jennifer Rodriguez and plaintiff, PATRICK ALFORD, SR.

88. Prior to December 29th, 2009 the infant, J.A. was in the care of her natural parents, Jennifer Rodriguez and plaintiff, PATRICK ALFORD, SR.

89. Prior to December 29th, 2009 Jennifer Rodriguez and plaintiff, PATRICK ALFORD, SR. had an informal custody and parenting arrangement with regard to the infant, P.A., JR.

90. Prior to December 29th, 2009 Jennifer Rodriguez and plaintiff, PATRICK ALFORD, SR. had an informal custody and parenting arrangement with regard to the infant, J.A.

91. Prior to December 29th, 2009 Jennifer Rodriguez had a history of involvement with the Administration for Children's Services.

92. Prior to December 29th, 2009 the Administration for Children's Services was aware that Jennifer Rodriguez required services and assistance.

93. Prior to December 29th, 2009 Jennifer Rodriguez, P.A., JR. and J.A. were receiving services from defendants.

94. Prior to December 29th, 2009 there were various caseworkers, case planners, supervisors and managers of the defendants assigned to, and working on, rendering services to Jennifer Rodriguez, P.A., JR. and J.A.

95. Prior to December 29th, 2009 each of the above named defendants were assigned to, and/or involved with Jennifer Rodriguez, P.A., JR. and J.A.

96. Prior to December 29th, 2009 each of the above named defendants were engaged in rendering preventive services to Jennifer Rodriguez, P.A., JR. and J.A.

97. Prior to December 29th, 2009 the Jennifer Rodriguez was receiving services from the defendants.

98. Prior to December 29, 2009 the defendants, their agents, servants and employees were aware that plaintiff PATRICK ALFORD, SR. was the biological father of the infant, P.A., JR.

99. Prior to December 29, 2009 the defendants, their agents, servants and employees were aware that plaintiff PATRICK ALFORD, SR. was the biological father of the infant, J.A.

100. From at least April 9th, 2009 the defendants, their agents, servants and employees were aware that plaintiff PATRICK ALFORD, SR. was the biological father of the infant, P.A., JR.

101. From at least April 9th, 2009 the defendants, their agents, servants and employees were aware that plaintiff PATRICK ALFORD, SR. was the biological father of the infant, J.A.

102. Prior to December 29th, 2009 the defendants received multiple reports that Jennifer Rodriguez was not an adequate caregiver for the children.

103. On or before December 29th, 2009 the defendants received multiple reports that the children were in danger of being abused and/or neglected while in the care of Jennifer Rodriguez.

104. On or about October 13th, 2007 the defendants received a report that Jennifer Rodriguez was selling drugs in front of the children.

105. On or about October 13th, 2007 the defendants received a report that Jennifer Rodriguez was using drugs in front of the children.

106. On or about October 13th, 2007 the defendants received a report that Jennifer Rodriguez tested positive for cocaine use.

16

107.     On or about October 13th, 2007 the defendants received a report that Jennifer Rodriguez was not meeting the children's health needs.

108.     On or about March 13th, 2009 the defendants received a report that the children were being left unsupervised with Jennifer Rodriguez's boyfriend, who was not a good caregiver due to mental health problems.

109.      On or about March 13th, 2009 the defendants received a report that Jennifer Rodriguez tested positive for PCP.

110.     Beginning on or about March 20, 2009 Jennifer Rodriguez was reporting to the case planner that she was "overwhelmed" and requested preventive services.

111.     On or about March 26th, 2009 Jennifer Rodriguez again reported being "overwhelmed" and requested preventive services.

112.     On or about May 22, 2009 Jennifer Rodriguez again tested positive for PCP in a urine drug screen.

113.     On or about June 16th, 2009 the defendants were advised by the child, P.A., JR. that he is left alone in the house.

114.     On or about June 25th, 2009 Jennifer Rodriguez again reported being "overwhelmed" and requested preventive services.

115.     On or about September 3rd, 2009 the defendants received a new report of inadequate guardianship against Jennifer Rodriguez.

116.     On or about September 3rd, 2009 the defendants received a report that Jennifer Rodriguez was the victim of domestic violence, which included visible bruises and having a gun pointed at her head in the presence of the children.

17

117.     On or about September 3rd, 2009 the defendants received a report that Jennifer Rodriguez was unable to protect the children.

118.     On or about September 3rd, 2009 the defendants received a report from a hospital that Jennifer Rodriguez was being physically abused and using PCP.

119.     On or about September 3rd, 2009 Jennifer Rodriguez admitted to the defendants that she used PCP.

120.     Beginning at least September 9, 2009 Jennifer Rodriguez was failing to make appointments with the defendants and refusing to reschedule appointments.

121.     On or about September 28, 2009 defendants received a report that Jennifer Rodriguez needed to relocate because her windows had been broken and her belongings were missing from the home.

122.     On or about December 26th, 2009 the defendants were aware that Jennifer Rodriguez was arrested for shoplifting in the presence of the children.

123.      Prior to December 29th, 2009 the defendants received multiple reports that Jennifer Rodriguez was leaving the children alone.

124.     Prior to December 29th, 2009 the defendant knew that Jennifer Rodriguez was using drugs.

125.     Prior to December 29th, 2009 the defendants knew that Jennifer Rodriguez was not compliant with drug treatment.

126.     Prior to December 29, 2009 the defendants, their agents, servants and employees knew, or should have known, that Jennifer Rodriguez was placing the children, P.A., JR., and J.A. at risk of abuse, neglect, or maltreatment.

127.      Prior to December 29, 2009 the defendants, their agents, servants and employees knew, or should have known, that the children, P.A., JR. and J.A. were at risk of being removed from the care of Jennifer Rodriguez.

128.      On or about December 29th, 2009, the defendants, their agents, servants, or employees did remove the infant, P.A., JR., from the care of his mother, Jennifer Rodriguez.

129.      On or about December 29th, 2009, the defendants, their agents, servants, or employees did remove the infant, P.A., JR., from the care of his Aunt, Blanca Toledo.

130.      On or about December 29th, 2009 the defendants, their agents, servants, or employees did remove the infant, J.A., from the care of her mother, Jennifer Rodriguez.

131.      At the time of the removal, and thereafter, defendants were acting under color of state law in their official capacities as persons and entities engaged in the removal, placement, supervision, monitoring, control, protection, care, and management of children under the Family Court Act, the Social Services Law, and as an "authorized agency" as defined in the New York Social Services Law section 371 and/or under their contract with defendant CITY OF NEW YORK.

132.      Said removal of P.A., JR. was based on allegations of suspected abuse and/or neglect of P.A., JR., against Jennifer Rodriguez .

133.      Said removal of J.A. was based on allegations of suspected abuse and/or neglect of J.A. against Jennifer Rodriguez .

134.    Said removal was based on allegations and/or suspicion of drug use by

Jennifer Rodriguez.

135.    Said removal of P.A., JR. was involuntary.

136.    Said removal of J.A. was involuntary.

137.    Said removal of P.A., JR. was without Court Order.

138.    Said removal of J.A. was without Court Order.

139.    At the time of the removal of P.A., JR. no emergency existed.

140.    At the time of the removal of J.A. no emergency existed.

141.    At the time of the removals of J.A. and P.A, JR. a third child was in the

care of Jennifer Rodriguez, to wit: "J.Y."

142.    That J.Y. was placed in the care of her father, Antoine "Duane"

Yarbrough.

143.    That defendant, THE CITY OF NEW YORK, by and through the

Administration for Children's Services, did place, supervise, monitor, manage,

oversee and control the removal and placement of plaintiff J.A.

144.    That the defendant, THE CITY OF NEW YORK, by and through the

Administration for Children's Services, did place, supervise, monitor, manage,

oversee and control the removal and placement of P.A., JR.

145.    That upon removal defendants, THE CITY OF NEW YORK, did place the

children in the care of defendant ST. VINCENTS SERVICES,

INCORPORATED.

146.    That upon removal defendants, ST. VINCENTS SERVICES, did place the

children in the care of defendant LIBRADA MORAN.

147.     That upon being removed plaintiff J.A. was under the care, custody, supervision, and control of defendant, THE CITY OF NEW YORK.

148.     That upon being removed the infant, P.A, JR. was under the care, custody, supervision and control of defendant, THE CITY OF NEW YORK.

149.     That the child J.A. continues to be under the custody, care, supervision, and control of defendants THE CITY OF NEW YORK.

150.     That the child P.A., JR. continues to be under the custody, care, supervision, and control of defendants THE CITY OF NEW YORK.

151.     That upon being placed, plaintiff J.A. was under the custody, care, supervision, and control of defendant, ST. VINCENTS SERVICES, INCORPORATED.

152.     That upon being placed, the infant, P.A, JR. was under the custody, care, supervision and control of defendant, ST. VINCENTS SERVICES, INCORPORATED.

153.     That prior to and at the time of the removal the defendants knew that plaintiff, PATRICK ALFORD, SR. had previously cared for the child, J.A.

154.     That prior to and at the time of the removal the defendants knew that plaintiff, PATRICK ALFORD, SR. had previously cared for the child, P.A., JR.

155.     That prior to and at the time of the removal the plaintiff, PATRICK ALFORD, SR. was an appropriate and available caretaker for the said children.

156.     That prior to and at the time of the removal the plaintiff, PATRICK ALFORD, SR. had a presumptive right to the care and custody of his children, P.A., JR. and J.A.

157.      That prior to and at the time of the removal the plaintiff, PATRICK

ALFORD, SR. was presumptively a suitable caretaker for his children, P.A., JR.

and J.A.

158.      That prior to and at the time of the children being placed into foster care

the plaintiff, PATRICK ALFORD, SR., was known by the defendants to be the

biological father of the child, P.A., JR.

159.      That prior to and at the time of the children being placed into foster care

the plaintiff, PATRICK ALFORD, SR., was known by the defendants to be the

biological father of the child, J.A.

160.      That prior to said removal the defendants failed to contact plaintiff

PATRICK ALFORD, SR.

161.      That prior to said removal the defendants failed to explore PATRICK

ALFORD, JR. as an available resource for the children.

162.      That prior to said removal the defendants failed to contact plaintiff

PATRICK ALFORD, SR. to avoid placement of the children

163.      That prior to said removal defendants failed to attempt to locate an

available resource for the children other than Foster care Placement.

164.      That prior to the removal the defendants failed to place the children with

their biological father, plaintiff PATRICK ALFORD, SR.

165.      That prior to, and at the time of, the removal the defendants knew of the

special needs of the child, P.A., JR.

166.     On or about December 30th, 2009 the father of said children, P.A., SR.,
attended a child safety conference at which time he presented himself as an
available resource for the children and was a resource for said children.

167.     On or about December 30, 2009 defendants placed the child P.A., JR., in
the care of defendant LIBRADA MORAN, a foster mother, at her residence
located at 130 Vandalia Street, 11B, Brooklyn, New York.

168.     On or about December 30th, 2009 defendants placed the child, J.A. in the
care of defendant LIBRADA MORAN, a foster mother, at her residence located
at 130 Vandalia Street, 11B, Brooklyn, New York.

169.     That the foster care mother did not speak English and the children did not
speak Spanish.

170.     Beginning on or about January 5th, 2010 and continuing until the time he
disappeared, the defendants were aware that the child, P.A., JR., was distraught
over his Foster Care placement and was not coping well.

171.     That while in the foster mothers care P.A., JR was exhibiting obvious
signs that he was in distress over his placement, which signs included, but were
not limited to:

   a.  Constantly asking and begging to go home.

   b.  Acting out towards the other children in the foster mother's care, including
       hitting the other children and then denying that he was doing so.

   c.  Repeatedly complaining that his head hurt.

   d.  Not sleeping.

   e.  Wandering around his room talking to himself.

f.   Telling his sister, J.A, that he was going to kill her.

g.   Hitting himself.

h.   Spreading feces in the bathroom on the walls, light switch, and toilet.

i.   Fighting with and hitting his sister, including using his feet to hit his sister.

j.   Striking the youngest child in the foster mother's care with his elbow in the eye.

k.   Telling the foster mother that he "could not take it anymore".

l.   Repeatedly threatening to, and repeatedly attempting to, run away.

m.   Expressing suicidal ideations.

n.   On or about January 7th, 2010 the child P.A., JR., was observed to be messy, unkempt and in an extreme state of distress.

o.   On or about January 7th, 2010 the child J.A. was observed to be messy, unkempt and to have scratches on her face.

p.   On or about January 7th, 2010 the foster mother advised the defendants that P.A., JR. would not sleep; that he would stay up all night talking to himself, moving about the room, on and off his bed.

q.   On January 8th, 2010, during a supervised visit between P.A., JR. and his biological mother, Jennifer Rodriguez, P.A., JR. repeatedly asked about going home and tried repeatedly to run away even while his biological mother remained in the room, including trying to run past the case worker in an effort to run away; trying to jump over the case worker in an effort to run away; trying to use the excuse that he wanted to use the restroom in an effort to run away; banging on the windows of the facility; picking up a

24

chair in an effort to throw it through the window as a means of attempting to run away; trying to turn over a heavy table, and making other efforts to demonstrate his distress over his placement and in an effort to run away. The defendant's case worker, who was present for this visit, documented no less than 33 times that P.A. was making repeated attempts to run away during that single visit.

r.   That the child's Aunt advised that she had never seen the child act that way before.

s.   On or about January 11th, 2010 the defendants were advised by the foster mother that she was having difficulty caring for Patrick and that she had to constantly keep an eye on him due to his behavior and his repeated threats and attempts to run away.

t.   On January 14th. 2010 Patrick ran off the train while travelling with the foster mother, at which time the foster mother caught Patrick and had to hold his hand the entire rest of the train ride to prevent him from running away.

u.   On January 21, 2010, in the presence of defendant CARLINE ANDERSON, the child, P.A., JR., did attempt to open the door and run away from the foster mother home but was restrained by the foster mother and defendant CARLINE ANDERSON.

v.   On January 21, 2010 in the presence of defendant CARLINE ANDERSON, the child, P.A., JR., did attempt to intentionally cut himself

with a pair of scissors but was restrained from doing so by defendant
LIBRADA MORAN.

    w.  The foster mother repeatedly expressed to defendants that caring for P.A.,
JR was "too much" for her to handle and causing "too much stress".

    x.  Defendants were aware that the child, P.A., JR. was in need of a
psychological evaluation and services.

    y.  That the foster mother advised the defendants that P.A, JR's behavior was
escalating.

172.    The defendants herein had actual and constructive notice that P.A., JR.,
required greater care, supervision, and services than he was receiving in foster
care.

173.    Beginning on or before January 5th, 2010 and continuing thereafter, the
defendants were aware that the child, P.A., JR. was threatening to run away.

174.    Beginning on or before January 5th, 2010 and continuing thereafter, the
defendants were aware that the child, P.A., JR. was attempting to run away.

175.    Defendants herein took certain actions, and made certain omissions which
exacerbated the situation, which included but was not limited to:

    a.  Refusing to allow P.A., JR. to visit with, or have telephone contact with,
his father, plaintiff, PATRICK ALFORD, SR.

    b.  Refusing to allow J.A. to visit with, or have telephone contact with, her
father, plaintiff, PATRICK ALFORD, SR.

    c.  After January 8th, 2010, refusing to allow P.A., J.R. to visit with, or have
telephone contact with, his mother, Jennifer Rodriguez.

d.   After January 8th, 2010, refusing to allow J.A. to visit with, or have

telephone contact with, her mother, Jennifer Rodriguez.

176.     That the infant P.A., JR., was not provided with adequate supervision by

the foster mother.

177.     Defendants were under a duty to safeguard the welfare of the child, P.A.,

JR.

178.     The defendants were aware of, and on notice of the security issues

regarding the child P.A., JR.

179.     On or about January 22nd, 2009 the child, P.A. did go missing from, and

did disappear from, the care of defendants.

180.     On or about the 22nd day of January 2010, at approximately 9:00pm, the

infant P.A., JR. was left alone and unsupervised in either the public hallway of the

foster mother's home or inside the foster mother's home, at 130 Vandalia Avenue,

11B, Brooklyn, New York, and the infant P.A., JR., has not been seen since that

time.

181.     Defendants, their employees, agents, and servants were careless, reckless,

and negligent in the care provided to the infant, P.A., JR.

182.     Defendants, their employees, agents, and servants were careless, reckless,

and negligent in that the child, P.A., JR. did go missing while in their care.

183.     Prior to, or on or about, January 22nd, 2010 defendants did approve

plaintiff PATRICK ALFORD, SR. as a suitable caretaker for the children.

184.     On or about January 22nd, 2010 defendants did parole the child, J.A. to the

care of plaintiff PATRICK ALFORD, SR.

185.     On or about January 22nd, 2010 defendants failed to parole the child, P.A., JR., in the care of plaintiff PATRICK ALFORD, SR., without cause or justification for failing to do so.

186.     The defendants failure to return the child, P.A., JR. to the care of his father, PATRICK ALFORD, SR., is ongoing and continues to the present.

187.     Defendants do not know the whereabouts of the child P.A., JR., despite that the child remains in their care pursuant to said removal.

188.     Defendants are under a duty to return the infant child, P.A., JR., to plaintiff PATRICK ALFORD, SR.

189.     Defendants have breached said duty in that they have failed to return said infant to the care of plaintiff PATRICK ALFORD, SR. which failure is ongoing and continues to the present time.

190.     Defendants have breached their duty to reunite the child P.A., JR. with his father, plaintiff PATRICK ALFORD, SR.

191.     Defendants have breached their duty to reunite the child P.A., JR. with his sister, plaintiff, J.A..

192.     The removal of P.A., JR. was improper.

193.     The removal of J.A. was improper.

194.     The placement of the child, P.A., JR., was improper.

195.     The placement of the child, J.A. was improper.

196.     The removal and placement of P.A., JR. was in violation of plaintiff PATRICK ALFORD, SR.'S constitutional rights.

197.     That the removal and placement of J.A. was in violation of plaintiff PATRICK ALFORD, SR.'S constitutional rights.

198.     That the removal and placement of P.A., JR. was in violation of P.A., JR'S constitutional rights.

199.     That the removal and placement of J.A. was in violation of plaintiff J.A.'S constitutional rights.

200.     That the removal and placement of P.A.,JR. and J.A. was the direct and proximate result of a pattern, practice, and custom of gross negligence and deliberate indifference to the constitutional rights of the non-respondent father.

201.      That the removal and placement of P.A., JR. was the direct and proximate result of a pattern, practice, and custom of gross negligence and deliberate indifference to the constitutional rights of the child.

202.     That the removal and placement of J.A. was the direct and proximate result of a pattern, practice, and custom of gross negligence and deliberate indifference to the constitutional rights of the child.

203.     Defendants conduct was grossly negligent and objectively unreasonable under the circumstances and violated clearly established Constitutional rights of the plaintiff with respect to liberty and privacy interests; freedom from unreasonable search and seizure; the right to due process; the right to equal protection; the right to the return of a child in municipal care.

204.     Defendants conduct was grossly negligent and  objectively unreasonable under the circumstances and violated clearly established Constitutional rights of the child, J.A. with respect to liberty and privacy interests; freedom from

unreasonable search and seizure; the right to due process; the right to equal

protection; the right to be in the custody and care of her father.

205.     Defendants conduct was grossly negligent and objectively unreasonable

under the circumstances and violated clearly established Constitutional rights of

the child, P.A., JR. with respect to liberty and privacy interests; freedom from

unreasonable search and seizure; the right to due process; the right to equal

protection; the right to be in the custody and care of his father.

206.     On or about the 29th day of March, 2010, the plaintiff served the

defendant, CITY OF NEW YORK with a Notice of Claim in the within action.

207.     More than 90 days have elapsed since the service of plaintiff's notice of

claim and defendant, the CITY OF NEW YORK, has failed and/or refused to

compromise said claim.

208.     The said claims are submitted within the time provided by law.

## FIRST COUNT

**FEDERAL CLAIM ON BEHALF OF PLAINTIFF, PATRICK ALFORD, SR.
AGAINST INDIVIDUAL DEFENDANTS**
**Violation of the Rights secured by 42 U.S.C. 1983 and the Fourth and Fourteenth
Amendments to the United States Constitution**

209.     Plaintiffs repeat, re-allege, and incorporate each and every allegation and

statement set forth in each of the previous paragraphs as though fully set forth

herein.

210.     Defendants, OMAR LOFTON, KATHLEEN BENITEZ, MARIA PENA,

ROBERT SALEMI, NATALIA ROSADO, ZANETTE SARGEANT, SHARICE

SCOTT, EMMANUEL OKON, JAKE NIXON, JR., CARLINE ANDERSON,

ZOILA VILLALTA, and LIBRADA MORAN, were grossly negligent and acted

with deliberate indifference to plaintiff, PATRICK ALFORD, SR.'s

Constitutional rights as the father of P.A., JR. and J.A.; to his Constitutional right

to the companionship, care, custody and management of his children; to his

Constitutional right against unreasonable search and seizure; to his Constitutional

right to due process; to his Constitutional right to equal protection under the law.

211.     Defendants, OMAR LOFTON, KATHLEEN BENITEZ, MARIA PENA,

ROBERT SALEMI, NATALIA ROSADO, ZANETTE SARGEANT, SHARICE

SCOTT, EMMANUEL OKON, JAKE NIXON, JR., CARLINE ANDERSON,

ZOILA VILLALTA, and LIBRADA MORAN, were grossly negligent and acted

with deliberate indifference to the needs of the children P.A., JR. and J.A. while

in foster care placement; to the  indications and signs that the child, P.A.,. JR. was

in distress, required greater supervision, was a flight risk, was a risk to himself,

and was otherwise in need greater care than he was receiving while in placement;

to the inappropriateness of the placement; to the need for increased supervision,

care and services for the child, P.A., JR.; to the foster mother's inability to

properly care for the child, P.A., JR.; to the child P.A., JR.'s need for contact and

interaction with his parents.

212.     As a direct and proximate result of the conduct of the individual

caseworkers, case planners, supervisors, and managers, committed under color of

state law, plaintiff PATRICK ALFORD, SR. was deprived of his Constitutional

rights as the father of P.A., JR. and J.A; was deprived of his Constitutional right

to the companionship, care, custody and management of his child, J.A., and the

companionship, care, custody and management of his child P.A., JR., which

deprivation is continuing; was deprived of his Constitutional right against unreasonable search and seizure; was deprived of his Constitutional right to due process; was deprived of his Constitutional right to equal protection under the law.

213.     As a result, plaintiff, PATRICK ALFORD, SR. suffered from, continues to suffer from, and will, in the future, suffer from injuries and damages including the deprivation of his constitutional rights, pain and suffering, extreme emotional distress, mental anguish, anxiety, loss of the companionship, care, custody and management of his child, J.A. and the loss of the companionship, care, custody and management of his child P.A., JR., which loss is continuing.

*PRAYER FOR RELIEF*

WHEREFORE, plaintiff, PATRICK ALFORD, SR. respectfully requests this Honorable Court to:

(a)  Declare that defendants actions violated plaintiff's Constitutional rights as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and grant judgment against all defendants jointly and/or severally; and

(b)  Award plaintiff compensatory damages; and

(c)  Award plaintiff punitive damages; and

(d)   Grant plaintiff pre-judgment interest; and

(e)  Grant plaintiff the costs of litigation, disbursements and attorney's fees pursuant to 42 U.S.C. 1983; and

(f)  Grant such other, further, and different relief as this Court deems just, proper and equitable.

## SECOND COUNT

**FEDERAL CLAIM ON BEHALF OF PLAINTIFF, PATRICK ALFORD, SR.
AGAINST THE CITY OF NEW YORK AND
ST. VINCENTS SERVICES, INCORPORATED
Violation of the Rights secured by 42 U.S.C. 1983 and the Fourth and Fourteenth
Amendments to the United States Constitution**

214.     Plaintiffs repeat, re-allege, and incorporate each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

215.     Defendants, THE CITY OF NEW YORK and ST VINCENTS SERVICES, INCORPORATED have tolerated, ratified, encouraged and been grossly negligent and deliberately indifferent to the following policies, patterns, practices and customs of its employees, agents, servants, caseworkers, case planners, supervisors, managers, and the individual defendants named herein employed by defendants, including:

a.  Violations of the Constitutional rights of the rights of the non-respondent father to the care, custody and management of his children; and

b.  Violations of the Constitutional rights of the rights of the non-respondent father against unreasonable search and seizure; and

c.  Violations of the Constitutional rights of the rights of the non-respondent father to due process under the law; and

d.  Violations of the Constitutional rights of the rights of the non-respondent father to equal protection under the law, and

33

e.   Violations of the Constitutional rights of the children, P.A., JR. and J.A.

f.   To the needs of the children P.A., JR. and J.A. while in foster care placement.

g.   To the clear indications and signs that the child, P.A., JR. was in distress; required greater supervision; was a flight risk; was a risk to himself; and was otherwise in need greater care than he was receiving.

h.   To the inappropriateness of the placement.

i.   To the need for increased supervision, care and services for the child, P.A., JR.

j.   To the foster mother's inability to properly care for the child, P.A., JR.

k.   To the child P.A., JR.'s need for contact and interaction with his parents.

l.   To the need for more or different training, supervision, investigation, evaluation, instruction, management, supervision, and control of  foster parents, caseworkers, case planners, supervisors, managers, and others in order to prevent such violations and abuses, thereby causing and encouraging the individual defendants in this case, to violate the rights of citizens such as the plaintiffs herein.

## *PRAYER FOR RELIEF*

WHEREFORE, plaintiff, PATRICK ALFORD, SR. respectfully requests this Honorable Court to:

(a)   Declare that defendants actions violated plaintiff's Constitutional rights as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to

the United States Constitution, and grant judgment against all defendants

jointly and/or severally; and

(b)  Award plaintiff compensatory damages; and

(c)  Award plaintiff punitive damages; and

(d)   Grant plaintiff pre-judgment interest; and

(e)  Grant plaintiff the costs of litigation, disbursements and attorney's fees

pursuant to 42 U.S.C. 1983; and

(f)  Grant such other, further, and different relief as this Court deems just, proper

and equitable.

## <u>THIRD COUNT</u>

### FEDERAL CLAIM ON BEHALF OF PLAINTIFF, J.A.
### AGAINST INDIVUDUAL DEFENDANTS
### Violation of the Rights secured by 42 U.S.C. 1983 and the Fourth and Fourteenth
### Amendments to the United States Constitution

216.       Plaintiffs repeat, re-allege, and incorporate each and every allegation and

statement set forth in each of the previous paragraphs as though fully set forth

herein.

217.       Defendants, OMAR LOFTON, KATHLEEN BENITEZ, MARIA PENA,

ROBERT SALEMI, NATALIA ROSADO, ZANETTE SARGEANT, SHARICE

SCOTT, EMMANUEL OKON, JAKE NIXON, JR., CARLINE ANDERSON,

ST. VINCENTS SERVICES, INCORPORATED, ZOILA VILLALTA, and

LIBRADA MORAN, were grossly negligent and acted with deliberate

indifference to plaintiff, J.A.,'S Constitutional right to the companionship, care,

custody and management of her father; her Constitutional right against

35

unreasonable search and seizure; her Constitutional right to due process; and her Constitutional right to equal protection under the law.

218.     Defendants, OMAR LOFTON, KATHLEEN BENITEZ, MARIA PENA, ROBERT SALEMI, NATALIA ROSADO, ZANETTE SARGEANT, SHARICE SCOTT, EMMANUEL OKON, JAKE NIXON, JR., CARLINE ANDERSON, ZOILA VILLALTA, and LIBRADA MORAN, were grossly negligent and acted with deliberate indifference to the needs of the children P.A., JR. and J.A. while in foster care placement, and the clear indications and signs that the child, P.A.,. JR. was in distress; required greater supervision; was a flight risk; was a risk to himself; and was otherwise in need of greater care than he was receiving; to the inappropriateness of the placement; to the need for increased supervision, care and services for the child, P.A., JR.; to the foster mother's inability to properly care for the child, P.A., JR.; to the child P.A., JR.'s need for contact and interaction with his parents.

219.     As a direct and proximate result of the conduct of the individual caseworkers, case planners, supervisors, and managers, committed under color of state law, plaintiff J.A. was deprived of her Constitutional right to the companionship, care, custody and management of her father; was deprived of her Constitutional right against unreasonable search and seizure; was deprived of her Constitutional right to due process; was deprived of her Constitutional right to equal protection under the law; was deprived of her Constitutional right to the companionship of her brother, P.A., JR, which deprivation is continuing.

36

220.     As a result, plaintiff, J.A. suffered from, continues to suffer from, and will, in the future, suffer from injuries and damages including the deprivation of her Constitutional rights, pain and suffering, extreme emotional distress, mental anguish, anxiety, loss of the companionship, care, custody and management of her father for a period of time, and the loss of the companionship of her brother P.A., JR., which loss is continuing.

*PRAYER FOR RELIEF*

WHEREFORE, plaintiff, J.A. respectfully requests this Honorable Court to:

(g) Declare that defendants actions violated plaintiff's Constitutional rights as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and grant judgment against all defendants jointly and/or severally; and

(h) Award plaintiff compensatory damages; and

(i) Award plaintiff punitive damages; and

(j)  Grant plaintiff pre-judgment interest; and

(k) Grant plaintiff the costs of litigation, disbursements and attorney's fees pursuant to 42 U.S.C. 1983; and

(l) Grant such other, further, and different relief as this Court deems just, proper and equitable.

**FOURTH COUNT**

**FEDERAL CLAIM ON BEHALF OF PLAINTIFF, J.A.**
**AGAINST THE CITY OF NEW YORK AND**
**ST. VINCENTS SERVICES, INCORPORATED**
**Violation of the Rights secured by 42 U.S.C. 1983 and the Fourth and Fourteenth**
**Amendments to the United States Constitution**

221.     Plaintiffs repeat, re-allege, and incorporate each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

222.     Defendants, THE CITY OF NEW YORK and ST VINCENTS SERVICES, INCORPORATED have tolerated, ratified, encouraged and been grossly negligent and deliberately indifferent to the following policies, patterns, practices and customs of its employees, agents, servants, caseworkers, case planners, supervisors, managers, and the individual defendants named herein:

    a.  Violations of the Constitutional rights of the rights of the child to be in the care, custody and management of her father; and

    b.  Violations of the Constitutional rights of the rights of the child against unreasonable search and seizure; and

    c.  Violations of the Constitutional rights of the rights of the child to due process; and

    d.  Violations of the Constitutional rights of the rights of the child to equal protection under the law, and

    e.  To the needs of the child J.A. while in foster care placement, and

    f.  To the needs of P.A., JR. while in foster care placement.

    g.  To the clear indications and signs that the child, P.A., JR. was in distress; required greater supervision; was a flight risk; was a risk to himself; and was otherwise in need greater care than he was receiving.

    h.  To the inappropriateness of the placement.

i.  To the need for increased supervision, care and services for the child, P.A., JR.

j.  To the foster mother's inability to properly care for the child, P.A., JR.

k.  To the child P.A., JR.'s need for contact and interaction with his parents.

l.  To the need for more or different training, supervision, investigation, evaluation, instruction, management, supervision, and control of foster parents, caseworkers, case planners, supervisors, managers, and others in order to prevent such violations and abuses, thereby causing and encouraging the individual defendants in this case, to violate the rights of citizens such as the plaintiffs herein.

*PRAYER FOR RELIEF*

WHEREFORE, plaintiff, J.A. respectfully requests this Honorable Court to:

(a)  Declare that defendants actions violated plaintiff's Constitutional rights as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and grant judgment against all defendants jointly and/or severally; and

(b)  Award plaintiff compensatory damages; and

(c)  Award plaintiff punitive damages; and

(d)  Grant plaintiff pre-judgment interest; and

(e)  Grant plaintiff the costs of litigation, disbursements and attorney's fees pursuant to 42 U.S.C. 1983; and

(f)  Grant such other, further, and different relief as this Court deems just, proper and equitable.

## FIFTH COUNT

### STATE CLAIM ON BEHALF OF PLAINTIFF, PATRICK ALFORD, SR. AGAINST ALL INDIVIDUAL DEFENDANTS, THE CITY OF NEW YORK, and  ST.VINCENTS SERVICES, INCORPORATED

223.    Plaintiff repeats, re-alleges, and incorporates each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

224.    Defendants, their agents, servants and employees were careless, reckless, and negligent in the placement, care, supervision, custody and control of P.A., JR. while in foster care.

225.    That the defendants, THE CITY OF NEW YORK and ST. VINCENTS SERVICES, INCORPORATED, were negligent in the hiring, training, screening, supervising, managing, assisting, and/or instructing their agents, officials, and employees, including but not limited to their case workers, case planners, foster care agencies, foster parents, and the individuals named herein and did thereby cause and/or contribute to the disappearance of P.A., JR.

226.    The defendants, their agents, servants and employees did negligently, carelessly, and recklessly cause and/or contribute to the disappearance of P.A., JR.

227.    Defendants had actual and constructive knowledge of the risk of said occurrence.

228.    Defendants have deprived the plaintiff PATRICK ALFORD, SR. of the custody, care, society, company, and supervision of his son, P.A., JR.

229.     As a result thereof, plaintiff PATRICK ALFORD, SR., was caused to, and did, suffer the disappearance and loss of his son, P.A., JR., and the prolonged separation from P.A., JR.

230.     That said loss and separation is ongoing and continuous.

231.     As a result of the foregoing, plaintiff PATRICK ALFORD, SR., has suffered, continues to suffer, and will in the future continue to suffer from extreme emotional distress, mental anguish, and psychological and/or psychiatric injuries, which may be of a permanent nature, has and will sustain grievous pain and suffering, has and will require hospital and/or medical expenses, and will sustain lost earning potential.

232.     That the actions of defendants were the proximate cause of the injuries alleged herein to PATRICK ALFORD, SR. with no contribution on the part of plaintiff herein contributing thereto.

## *PRAYER FOR RELIEF*

WHEREFORE, plaintiff, PATRICK ALFORD, SR. respectfully requests this Honorable Court to:

(a)  Award plaintiff compensatory damages; and

(b)  Award plaintiff punitive damages; and

(c)   Grant plaintiff pre-judgment interest; and

(d)  Grant such other, further, and different relief as this Court deems just, proper and equitable.

## SIXTH COUNT

**STATE CLAIM ON BEHALF OF PLAINTIFF, J.A. AGAINST ALL INDIVIDUAL DEFENDANTS, THE CITY OF NEW YORK, and ST.VINCENTS SERVICES, INCORPORATED**

233.     Plaintiff repeats, re-alleges, and incorporates each and every allegation and statement set forth in each of the previous paragraphs as though fully set forth herein.

234.     Defendants, their agents, servants and employees were careless, reckless, and negligent in the removal, placement, care, supervision, custody and control of J.A.

235.     Defendants, their agents, servants and employees were careless, reckless, and negligent in the removal, placement, care, supervision, custody and control of P.A., JR.

236.     That the defendants, THE CITY OF NEW YORK and ST. VINCENTS SERVICES, INCORPORATED, were negligent in the hiring, training, screening, supervising, managing, assisting, and/or instructing their agents, officials, and employees,  including but not limited to their case workers, case planners, foster care agencies, foster parents, and LIBRADA MORAN, and did thereby cause and/or contribute to  the disappearance of P.A., JR.

237.     The defendants, their agents, servants and employees did negligently, carelessly, and recklessly cause and/or contribute to the disappearance of P.A., JR.

238.     Defendants had actual and constructive knowledge of the risk of said occurrence.

239.     Defendants have deprived the plaintiff J.A. of the society, company, and companionship of her brother, P.A., JR.

240.     As a result thereof, plaintiff J.A was caused to, and did, suffer the disappearance and loss of her brother, P.A., JR., and the prolonged separation from P.A, JR.

241.     That said loss and separation is ongoing and continuous.

242.     As a result of the foregoing, plaintiff, J.A. has suffered, continues to suffer, and will in the future continue to suffer from extreme emotional distress, mental anguish, and psychological and/or psychiatric injuries, which may be of a permanent nature, has and will sustain grievous pain and suffering, has and will require hospital and/or medical expenses, and will sustain lost earning potential.

243.     That the actions of defendants were the proximate cause of the injuries alleged herein to J.A. with no contribution on the part of plaintiff herein contributing thereto.

*PRAYER FOR RELIEF*

WHEREFORE, plaintiff, J.A. respectfully requests this Honorable Court to:

(e)  Award plaintiff compensatory damages; and

(f)  Award plaintiff punitive damages; and

(g)   Grant plaintiff pre-judgment interest; and

(h)  Grant such other, further, and different relief as this Court deems just, proper and equitable.

**WHEREFORE**, the Plaintiffs demand judgment against the defendants and an award of damages against said defendants, jointly and severally, on each cause of action, as follows:

a) Declaring that defendants actions violated plaintiff PATRICK ALFORD, SR.,'S Constitutional rights, as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and granting judgment against all defendants jointly and/or severally; and

b) Declaring that defendants actions violated plaintiff J.A'S Constitutional rights, as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and granting judgment against all defendants jointly and/or severally; and

c) Declaring that defendants actions violated plaintiff P.A., JR'S Constitutional rights, as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and granting judgment against all defendants jointly and/or severally on behalf of plaintiff PATRICK ALFORD, SR. on his derivative claim; and

d) Declaring that defendants actions violated plaintiff P.A., JR'S Constitutional rights, as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and granting judgment against all defendants jointly and/or severally on behalf of plaintiff J.A. on her derivative claim; and

e) Declaring that defendants actions violated plaintiff J.A.'S Constitutional rights, as guaranteed by 42 U.S.C. 1983 and the Fourth and Fourteenth

Amendments to the United States Constitution, and granting  judgment

against all defendants jointly and/or severally on behalf of plaintiff PATRICK

ALFORD, SR. on his derivative claim; and

f)   Awarding compensatory damages to Plaintiff, PATRICK ALFORD, SR., and.

g)   Awarding compensatory damages to the Plaintiff, J.A., and

h)   Awarding punitive and exemplary damages against Defendant, OMAR

LOFTON, and

i)   Awarding punitive and exemplary damages against Defendant, KATHLEEN

BENITEZ, and

j)   Awarding punitive and exemplary damages against Defendant, MARIA

PENA, and

k)   Awarding punitive and exemplary damages against Defendant, ROBERT

SALEMI, and

l)   Awarding punitive and exemplary damages against Defendant, NATALIA

ROSADO, and

m)  Awarding punitive and exemplary damages against Defendant, ZANETTE

SARGEANT, and

n)   Awarding punitive and exemplary damages against Defendant, SHARICE

SCOTT, and

o)   Awarding punitive and exemplary damages against Defendant, EMMANUEL

OKON, and

p)   Awarding punitive and exemplary damages against Defendant, JAKE

NIXON, JR., and

q) Awarding punitive and exemplary damages against Defendant, CARLINE
   ANDERSON, and

r) Awarding punitive and exemplary damages against Defendant, ZOILA
   VILLALTA, and

s) Awarding punitive and exemplary damages against Defendant, LIBRADA
   MORAN, and

t) Awarding punitive damages against Defendant, CITY OF NEW YORK, and

u) Awarding punitive and exemplary damages against Defendant, ST.
   VINCENTS SERVICES, INCORPORATED, and

v) A Court Order pursuant to 42 U.S.C. 1998 that the Plaintiffs are entitled to
   costs of the action and attorney's fees, and

w) Such other, further, and different relief as this Court may deem just, proper,
   and equitable, including declaratory relief, under the circumstances of this
   case.

Dated: Staten Island, New York
       July 5, 2011

                                   Yours, etc.

                                   **THE LAW FIRM OF JAMES R. LAMBERT**
                                   1491 Richmond Road
                                   Staten Island, New York 10304
                                   Tel.  (718) 983-5050
                                   Fax. (718) 983-5088
                                   Email: JRLJRL1@aol.com