UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

PATRICK ALFORD, SR. and J.A., a minor, by
J.A. and her guardian ad litem, SYDELL MACK,

                              Plaintiffs,

          -against-

CITY OF NEW YORK; ST. VINCENT'S
SERVICES, INC.; ROBERT SALEMI,
individually and in his capacity as a Supervisor
of Child Protective Specialists for the Administration
for Children's Services; CARLINE ANDERSON,
 individually and in her capacity as a Case Worker for
St. Vincent's Services, Inc.; ZOILA VILLALTA,
individually and in her capacity as a Supervisor of
 Case Workers for St. Vincent's Services, Inc.; and
NATALIA ROSADO, individually and in her
capacity as a Child Protective Specialist for the
Administration for Children's Services,

                              Defendants.

------------------------------------------------------------------------ X

**ORDER ADOPTING REPORT AND RECOMMENDATION**

11-CV-1583 (LDH) (SMG)

LaSHANN DeARCY HALL, United States District Judge:

## BACKGROUND

Plaintiffs Patrick Alford, Sr. and J.A., a minor, by her *guardian ad litem*, Sydell Mack, bring this action against Defendants the City of New York (the "City"), Robert Salemi, Natalia Rosado, (together with the City and Salemi, "City Defendants"), St. Vincent's Services ("SVS"), Zoila Villalta, and Carline Anderson, pursuant to 42 U.S.C § 1983, alleging violations of the Fourth Amendment, the Fourteenth Amendment, and various state laws.[1] (*See generally* Am.

---

[1] Plaintiff Alford initially filed this action on behalf of himself and J.A., his minor child. However, on October 25, 2016, after Alford filed a motion for summary judgment, the Court appointed pro bono counsel and a *guardian ad litem* to represent the interests of J.A. (Min. Entry, Oct. 25, 2016, ECF No. 162.)

Compl., ECF No. 16.) A separate but related action was filed by Jennifer Rodriguez on behalf of herself and her minor son, P.A., against the same Defendants under similar legal theories (the "Related Action"). *See Rodriguez v. Admin. for Children's Servs.*, No. 10-cv-04661 (E.D.N.Y). The instant action and the Related Action were consolidated for the purpose of discovery. (Min. Entry, Dec. 15, 2011, ECF No. 42.)

All parties in the instant action and the Related Action moved for summary judgment on at least some claims in March and April 2014. On September 11, 2014, Judge Gleeson issued *P.A. v. City of New York*, 44 F. Supp. 3d 287 (E.D.N.Y. 2014), which decided the motions for summary judgment in the Related Action.[2] Judge Gleeson declined, however, to rule on motions brought in connection with Alford and J.A.'s claims (the subject of the instant motions) due to concerns about Alford's competency and his legal capacity to represent J.A. *P.A.*, 44 F. Supp. 3d at 315. Subsequently, a *guardian ad litem* and counsel were appointed to represent the interests of J.A. (Min. Entry, Oct. 25, 2016, ECF No. 162; Transcript, Oct. 25, 2016, ECF No. 167.) In view of the fact that J.A. had newly appointed counsel, the Court permitted J.A. to file a supplemental opposition to Defendants' motions on March 3, 2017. (Min. Entry, Feb. 24, 2017, ECF No. 174; J.A. Supp. Opp., ECF No. 177.) Defendants filed reply memoranda to that submission on April 3, 2017. (City Defs.' Supp. Reply, ECF No. 182; SVS Defs.' Supp. Reply, ECF No. 183.) Judge Gleeson referred the motions for summary judgment on claims asserted by Alford and J.A. to United States Magistrate Judge Steven Gold for a report and recommendation. (Order Referring Mot., Feb. 3, 2016, No. 10-cv-4661.)

On August 18, 2017, Magistrate Judge Gold issued a Report and Recommendation in which he recommended that this Court deny Plaintiffs' motion for summary judgment in its

---

[2] Both the instant action and the Related Action were reassigned to United States District Judge LaShann DeArcy Hall on March 10, 2016.

2

entirety, and grant, in part, and deny, in part, Defendants' motions for summary judgment. (*See* R. & R., ECF. No. 192.) Specifically, Magistrate Judge Gold recommended that: (1) Defendants' motions for summary judgment on Plaintiffs' procedural due process claims be granted; (2) Defendants' motions for summary judgment on Plaintiffs' substantive due process non-kinship placement claims be denied; (3) Defendants' motions for summary judgment on Plaintiffs' substantive due process quality of care claims be denied with respect to J.A. and granted with respect to Alford on grounds of qualified immunity; and (4) Defendants' motions for summary judgment on Plaintiffs' *Monell* claims be denied as to the City with respect to the City's alleged 20-day policy and granted in all other respects. (*Id.* at 24.) On September 22, 2017, Alford and City Defendants each timely filed an objection pursuant to Federal Rule of Civil Procedure 72(b)(2).[3]

The Court assumes the parties' familiarity with the facts and reviews Magistrate Judge Gold's report and recommendation *de novo*. *See* Fed. R. Civ. P. 72(b)(1), (3); 28 U.S.C. § 636(b)(1)(C).

**A. Procedural Due Process Claim**

Magistrate Judge Gold recommended dismissal of Plaintiffs' procedural due process claims. (R. & R. at 11.) In objection, Alford maintains that Magistrate Judge Gold reached his decision by wrongly "grafting onto Mr. Alford's claim the result reached by Judge Gleeson on Rodriguez's due process claim." (Pl. Alford's Obj., 9, ECF No. 197.) That is, according to

---

[3] Thereafter, on October 6, 2017, both J.A. (Reply Opp, to Obj., ECF No. 198) and Alford (Reply Opp, to Obj., ECF No. 200) filed responses to City Defendants' objections, and City Defendants filed a response to Alford's objections (Reply Opp, to Obj., ECF No. 199.). On October 13, 2017, City Defendants filed a reply to both Alford and J.A.'s responses. (Reply in Supp. Obj., ECF Nos. 203-04.) On November 3, 2017, Alford filed a letter requesting that this Court disregard City Defendants' October 13, 2017 reply letters as unpermitted sur-replies. (Letter, ECF No. 210.) On November 6, 2017, City Defendants responded to Alford's request, arguing that its October 13, 2017 replies were not prohibited by Magistrate Judge Gold's order or the plain text of Rule 72. (Letter, ECF No. 211.) The Court need not address this issue as the arguments advanced in the replies have no bearing on the Court's analysis.

3

Alford, because his claims relate to the events *after* the removal of the children whereas Rodriguez's procedural due process claim relates to the *initial* removal of the children from her, each claim warrants a different analysis, and by extension, a different outcome. (*Id*. at 6-7.) Alford's argument misses the mark.

The driving inquiry in any procedural due process analysis is whether a plaintiff was afforded notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Thus, the viability of Alford's procedural due process claim is not dependent upon the point at which the children were removed from Rodriguez, as he suggests. Rather, the operative question is whether Alford was provided notice and an opportunity to be heard. *Id.* Magistrate Judge Gold correctly found that on the record, there was insufficient evidence to support the claim that Alford was denied constitutional process. Instead, he concluded Alford "make[s] passing references throughout [his] submissions to claimed deprivations of procedural due process" but fails to "identify any occasion on which [he] [was] denied notice or an opportunity to be heard."[4] (R. & R. at 11.) The Court agrees. Accordingly, Alford's objection is overruled.

---

[4] To the contrary, the record indicates that Alford was presented an opportunity to be heard on multiple occasions. *First*, at the Initial Child Safety Conference on December 30, 2009. (Pl.s' Opp. to City Def.'s 56.1 Statement ¶¶ 57, 58, ECF No. 107-3.) *Second*, at a January 4, 2010 family court hearing represented by counsel. (*Id*. at ¶¶ 82, 83.) *Third*, at a January 6, 2010 family court hearing represented by counsel. (*Id*. at ¶¶ 90, 91.) This is sufficient to satisfy the demands of due process.

4

B. Substantive Due Process

   1. Personal Involvement

City Defendants argue that Magistrate Judge Gold erred in denying their motion for summary judgment as to the § 1983 claims against Robert Salemi, an Administration for Children's Services ("ACS") supervisor, and Natalia Rosado, a Child Protective Specialist, on the grounds that they lacked personal involvement in J.A.'s foster care placement and daily monitoring of same. (City Defs.' Obj., 3-4, ECF. No 196.)

City Defendants correctly note that Plaintiffs must show personal involvement of an individual defendant to sustain a § 1983 action against him or her. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). In their objection, City Defendants contend that Magistrate Judge Gold somehow overlooked or ignored this requirement. (City Defs.' Obj. at 3-4.) Such is not the case. As City Defendants assuredly know, the question of personal involvement is a question of fact, often precluding determination on summary judgment. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) ("Since personal involvement is a question of fact we are governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant[ ] is entitled to judgment as a matter of law."). Indeed, personal involvement can be predicated on a variety of facts. *Wright*, 21 F.3d at 501. A party may have directly participated in the alleged constitutional deprivation. *Id*. In some cases, a person will be considered personally involved, though not directly involved, if he or she is a supervisor but failed to remedy a wrong after learning of the violation. *Id*. In other cases, a supervisor may be liable if he or she created the policy or custom under which unconstitutional practices occurred, or failed to end such a policy or custom if already in

existence. *Id*. Likewise, a supervisor may be liable if he or she was grossly negligent in managing subordinates who committed the constitutional violation. *Id.*

In recommending that Defendants' motions for summary judgment be denied, Magistrate Judge Gold outlined a host of facts that could lead a reasonable jury to find that Salemi and Rosado were personally involved in Plaintiffs' alleged violations of Plaintiffs' substantive due process. (*See* R. & R. at 12-20.) For example, with respect to Plaintiffs' non-kinship placement claim, ACS records indicate that Salemi noted on the date of the Initial Child Safety Conference ("ICSC") that ACS would "explore kinship resource[s]" and would "make a visit to the father['s] current shelter to see if his children can be paroled to him" (R. & R. at 13.) However, it was approximately two to three weeks before Rosado or anyone from ACS came to the shelter to investigate. (*Id*.) When Rosado finally visited the shelter, she informed Alford that there was no reason why his children could not be placed with him, yet the placement was still not made. (*Id*.) Moreover, a year prior to Rodriguez's allegation that Alford's girlfriend abused the children, both Salemi and Rosado noted that Rodriguez was untrustworthy and a liar. (*Id*. at 15.) Likewise, with respect to J.A.'s quality of care claim, Magistrate Judge Gold noted that Rosado emailed others at ACS about P.A., including that P.A. said "he would hurt himself if he can't go home, and that he was going to hurt/kill his sister [J.A.] because she keeps getting him in trouble." (*Id*. at 18.) In addition, Salemi testified that he had access to J.A. and P.A.'s progress notes that described the foster placement conditions but that he "probably didn't look [at them]" although he may have "glanced" at them. (*Id*. at 19.) Magistrate Judge Gold also found that, because P.A.'s abuse of J.A. was detailed in ACS progress notes, Defendants knew or should have known about the issues. (*Id*. at 18.) These facts are sufficient to create a genuine issue of material fact on the question of personal involvement. City Defendants' objection is overruled.

2. <u>Quality of Care</u>

City Defendants object to Magistrate Judge Gold's recommendation that their motion regarding J.A.'s quality of care claim be denied. (City Defs.' Obj. at 4-5.) City Defendants seem to predicate their objection on the notion that Magistrate Judge Gold's recommendation was based solely on law of the case—that is, Judge Gleeson's decision to allow P.A.'s quality of care claim to proceed. (*Id.*) This is not so. Although Magistrate Judge Gold acknowledged that Judge Gleeson's analysis of P.A.'s claim was applicable in many respects to J.A.'s claim, his ultimate determination was based on an independent analysis of J.A.'s claim. (*See* R. & R. at 16-20.)

Upon review, Magistrate Judge Gold determined that "the evidence presented by [P]laintiffs could lead a [fact] finder to conclude that P.A. repeatedly struck J.A., took her food, grabbed her by the neck, and pushed out of her bed." (*Id.* at 18.) Furthermore, Magistrate Judge Gold stated that "[a] jury could also find that J.A. suffered emotionally by observing her brother smearing feces on the wall, threatening to cut himself with kitchen scissors, attempting to 'escape' his foster care setting, and hitting other children as young as one year old." (*Id.*) Accordingly, Magistrate Judge Gold rightly determined that a jury could reasonably conclude that Defendants were grossly negligent in failing to protect J.A. from physical and mental harm. (*Id.*); *see also Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 674–75 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) (collecting cases regarding the substantive due process right of children in foster to be protected from mental and physical harm). City Defendants' objection is overruled.

### C. Qualified Immunity

#### 1. Defendants' Objection

Magistrate Judge Gold recommended the denial of Defendants' motions for summary judgment on grounds of qualified immunity with respect to Alford and J.A.'s non-kinship placement claims. (R. & R. at 21.) According to Magistrate Judge Gold, this determination was dictated by law of the case flowing from Judge Gleeson's decision to deny Defendants' motions to dismiss Rodriguez and P.A.'s non-kinship placement claims. (R. & R. at 20-21.) City Defendants maintain that this was error. *First*, City Defendants contend that there is no law of the case regarding this issue because Judge Gleeson "indicated that he was actually declining to rule on the issue of qualified immunity for P.A.'s kinship placement." (City Defs.' Obj. at 5-6.) *Second*, City Defendants argue that the law of the case regarding Judge Gleeson's decision as to P.A.'s non-kinship claim does not require dismissal of City Defendants' motion as to J.A.'s non-kinship claim. (*Id.* at 6.) City Defendants ground this argument on the contention that they presented Judge Gleeson and Magistrate Judge Gold with different legal arguments regarding P.A. and J.A.'s claims, respectively. (*Id.*) City Defendants misread the record.

Judge Gleeson did not "decline" to rule on the issue of qualified immunity with respect to P.A's non-kinship placement claim. Instead, Judge Gleeson keenly noted that Defendants did not "argue[ ] that the relevant individuals responsible for P.A.'s placement should be granted qualified immunity." *P.A.*, 44 F. Supp. 3d at 310 n.14. In other words, City Defendants simply did not raise the issue and it was not before Judge Gleeson. Thus, it cannot be said that on this question Judge Gleeson and Magistrate Judge Gold had different arguments before them. Instead, as City Defendants concede, they raised qualified immunity on the non-kinship claim for

the first time in their reply to J.A.'s supplemental briefing in opposition to Defendants motions.[5] (City Defs.' Obj. at 6.) That is, City Defendants had not previously "contest[ed] that [P.A.] has a substantive due process right to be placed with a family member over a non-kin foster parent." *P.A.*, 44 F. Supp. 3d at 310 n.14. Perhaps for good reason.

At the outset of his opinion, Judge Gleeson outlined the various rights at issue in this case—including the concomitant rights of parent and child for a child to remain in parental custody. *Id.* at 299 ("Both child and parent possess a constitutionally protected liberty interest in the child's remaining in parental custody.") This right has been long and clearly established. *See, e.g. Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (holding that children have a parallel liberty interest in not being separated from their parents and, therefore, "[t]he state's removal of a child from his or her parent may []give rise to a variety of cognizable constitutional claims."); *Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000) ("[C]hildren have a parallel constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily [family] association."); *Duchesne v. Sugarman,* 566 F.2d 817, 825 (2d Cir.1977) ("Th[e] right to the preservation of family integrity encompasses the reciprocal rights of both parent and children."). Indeed, the Court cannot fathom many other rights more paramount than this. The right is not absolute, however.

As City Defendants aptly note, the right to familial integrity must be "counterbalanced by the compelling governmental interest in the protection of minor children, particularly in

---

[5] Typically, arguments made for the first time in a reply submission are not considered by the Court. *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir 1993) ("Arguments may not be made for the first time in a reply brief."); *Domino Media, Inc. v. Kranis*, 9 F.Supp.2d 374, 387, 387 n. 82 (S.D.N.Y. 1998) ("New arguments first raised in reply papers in support of a motion will not be considered." ). Here, J.A. was permitted a supplemental opposition to Defendants' motions for summary judgment to ensure her interests were adequately represented following the appointment of counsel—it was not an opportunity for Defendants to remedy the deficiencies of their opening submission or to raise new arguments. However, in light of the fact that it was J.A. who first raised the issue of qualified immunity in her supplemental opposition, this Court will address the issue.

circumstances where the protection is considered necessary as against the parent themselves." (City Defs.' Supp. Reply at 5.) (citing *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999). Whether the particular circumstances in this case were such that warranted the non-kinship placement, thus resulting in no constitutional violation, or would have caused caseworkers of reasonable competence to disagree on the matter, warranting a grant of qualified immunity, are questions of fact that cannot be resolved on this record. *Kerman v. City of New York*, 374 F.3d 93, 108-09 (2d Cir. 2004) ("[T]he matter of whether a defendant official's conduct was objectively reasonable, *i.e.,* whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact. . . Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder.") (internal quotation marks and citations omitted).

In sum, while the Court disagrees that dismissal here is necessary based on law of the case, it nonetheless concurs with Magistrate Judge Gold's recommendation for the reasons set out above. Accordingly, City Defendants' objection is overruled.

2. Alford's Objection

Alford objects to Magistrate Judge Gold's recommendation that Defendants' motions be granted with respect to his substantive due process quality of care claim on the grounds of qualified immunity. (Pl. Aflord's Obj. at 9-11.) Magistrate Judge Gold determined that grant of Defendants' motions was warranted based on the law of the case. (R. & R. at 20-21.)

As set out in Judge Gleeson's opinion, federal law provides a private right of action for money damages against state officials, acting "under color" of law, who violate a constitutional

10

or statutory right. 42 U.S.C. § 1983; *see also Kia P.,* 235 F.3d at 755. However, the doctrine of qualified immunity shields both state and federal officials from suit "unless [1] the official violated a statutory or constitutional right [2] that was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014). Official conduct violates clearly established law "when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011) (internal quotation marks omitted).

In analyzing P.A.'s quality of care claim, Judge Gleeson recognized the long-established right that "children in foster care [have] a substantive due process right to the protection from harm." *P.A.,* 44 F. Supp. 3d at 305 (quoting *Marisol A.*, 929 F. Supp. at 675). At the same time, Judge Gleeson found that, consistent with Rodriguez's theory, "a parent has a sufficiently strong interest in the care and management of her child that she may maintain a substantive due process action under § 1983 at least when a state custodian (or, as here, a state custodian's designee) is allegedly deliberately indifferent to the child's care." *Id.* at 313. However, Judge Gleeson ultimately determined that this parental right was "not clearly established" at the time of Defendants' conduct, thus warranting the application of qualified immunity as to Rodriguez's claims. *Id*. at 314.

Curiously, Alford urges the Court to view his quality of care claim as parallel to those brought by P.A. and J.A. It is not. Rather, Alford sits as Rodriguez does. Thus, the law of the case dictates, as Magistrate Judge Gold found, that the individual defendants are entitled to qualified immunity with respect to Alford's claim because it was not clearly established that "parents ha[d] a specific right to control a child's upbringing that is violated when a state

11

custodian fails to properly care for the child" at the time of the alleged wrongdoing. (*Id.*)

Alford's objection is overruled.

### D. Municipal Liability

In his Report and Recommendation, Magistrate Judge Gold recommended the grant of Defendants' motions on Plaintiffs' *Monell* claims, except as against the City based upon application of the "20-day rule." (R. & R. at 22-23.) Magistrate Judge Gold based his recommendation on Judge Gleeson pointing to documents explaining the purpose of the ICSC as well as the purported practice of holding a follow-up conference up to twenty days after the ICSC, during which time ACS did not generally attempt to change the assignment of a child. *Id*; *P.A.*, 44 F. Supp. 3d at 309. Judge Gleeson determined that this policy, coupled with the fact that the City quickly cleared the home of Ms. Mercado, a relative, but did not attempt to move P.A. from foster care to Ms. Mercado's care, created a triable issue regarding P.A.'s kinship placement claim. *P.A.*, 44 F. Supp. 3d at 309. The Court agrees.[6] However, unlike Magistrate Judge Gold, this Court does not construe Judge Gleeson's holding to narrowly apply only to the 20-day rule. In raising the 20-day rule, Judge Gleeson was undertaking a review of facts to support P.A.'s "failure to change placement to kinship" claim. *Id*. That is, Judge Gleeson was making a determination of whether any policy, practice, and custom existed that was sufficient to sustain municipal liability for Defendants' failure to change P.A.'s foster placement to one of kinship.

---

[6] For this reason, to the extent City Defendants' objection to the survival of Plaintiffs' non-kinship claim is based on the argument that the 20-day rule did not proximately cause Plaintiffs' deprivation of constitutional rights, (City Defs.' Obj. at 7.), the objection is overruled. Likewise, to the extent City Defendants' objection is premised on the notion that the kinship rights asserted by Plaintiffs do not exist or were not clearly established (*id*.), this too fails as no such finding has been made. City Defendants' objection is overruled.

12

Judge Gleeson's highlighting of the 20-day policy did not limit the non-kinship placement claim to only that policy. There may be other policies, practices, and customs that support the claim. For example, Alford alleges that the City has a policy of withholding a child from a non-offending parent even in the absence of abuse allegations. (Pl. Alford's Obj. at 11-12.) This policy, like the 20-day policy, creates "a triable issue." *P.A.,* 44 F. Supp. 3d at 309. Under this Court's construction of Judge Gleeson's opinion, the entirety of P.A.'s non-kinship placement claim persists. Likewise, applying law of the case, Alford's claim too survives. Accordingly, Alford's objection is denied as moot.[7]

**E. State Law Claims**

City Defendants object to Magistrate Judge Gold's recommendation that City Defendants' motion regarding Plaintiffs' state law claims be denied. (R. & R. at 23.) City Defendants contend for the first time in their reply brief that the state law claims should be dismissed on the grounds of governmental immunity. (City Defs.' Supp. Reply; City Defs.' Obj. at 8.) It is well-established that "[a]rguments may not be made for the first time in a reply brief." *Knipe*, 999 F.2d at 711). Therefore, "[n]ew arguments first raised in reply papers in support of a motion will not be considered." *Domino Media, Inc*, 9 F.Supp.2d at 387 (collecting cases that hold issues first raised in reply brief will not be considered by the court). Here, City Defendants failed to argue that the state law claims should be dismissed on the grounds of governmental immunity in their initial briefing. (*See generally* City Defs.' Cross-Mot. for Summ. J., ECF No. 102.); *P.A.*, 44 F. Supp.3d at 310. Undoubtedly, this argument was available to City Defendants from the start of this case and should have been raised in their initial submission. *See Bayway*

---

[7] Alford objected to Magistrate Judge Gold's recommendation that this Court grant Defendants' motions for summary judgment as the *Monell* claims against SVS and the City but deny the motions as to the *Monell* claims against the City based upon the application of the 20-day rule. (Pl. Alford's Obj. at 11-12.)

*Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (holding that reply papers may only address new issues that were raised in opposition papers). Having not timely raised the defense of governmental immunity, it is not properly before this Court. City Defendants' objection is overruled.

## CONCLUSION

Having addressed the parties' objections, for the foregoing reasons, Magistrate Judge Gold's Report and Recommendation is adopted as the opinion of this Court with respect to the following: (1) Plaintiff Alford's motion for summary judgment is DENIED; (2) Defendants' motions for summary judgment on Plaintiffs' procedural due process claims are GRANTED; (3) Defendants' motions for summary judgment on Plaintiffs' substantive due process non-kinship placement claims are DENIED; (4) Defendants' motions for summary judgment on Plaintiffs' substantive due process quality of care claims are DENIED with respect to J.A.'s claim and GRANTED with respect to Alford's claim on grounds of qualified immunity. With respect to Magistrate Judge Gold's recommendation regarding Plaintiffs' *Monell* claims, Defendants' motions for summary judgment are DENIED as to Defendant City with respect to Plaintiffs' § 1983 failure to change placement to kinship claim as this Court respectfully declines to adopt Magistrate Judge Gold's recommendation insofar as it limits the claim to the purported 20-day policy, and GRANTED in all other respects.

SO ORDERED:

 /s/ LDH
L aSHANN D e ARCY HALL
United States District Judge

Dated: Brooklyn, New York
       March 28, 2018