UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PATRICK ALFORD, SR. and J.A., a minor, by
J.A. and her guardian ad litem, SYDELL MACK,

                      Plaintiffs,

        -v.-

CITY OF NEW YORK; ST. VINCENT'S
SERVICES, INC.; ROBERT SALEMI,
individually and in his capacity as a Supervisor
of Child Protective Specialists for the Administration
for Children's Services; CARLINE ANDERSON,
individually and in her capacity as a Case Worker for
St. Vincent's Services, Inc.; ZOILA VILLALTA,
individually and in her capacity as a Supervisor of
Case Workers for St. Vincent's Services, Inc.; and
NATALIA ROSADO, individually and in her
capacity as a Child Protective Specialist for the
Administration for Children's Services,

                      Defendants.

**MEMORANDUM
AND ORDER**
11-cv-1583 (LDH) (SMG)

---

L*a*SHANN D*e*ARCY HALL, United States District Judge:

      Plaintiffs Patrick Alford, Sr., and J.A., a minor, by her *guardian ad litem*, Sydell Mack, assert claims against Defendants the City of New York, Robert Salemi, Natalia Rosado (collectively the "City Defendants"), St. Vincent's Services ("SVS"), Zoila Villalta, and Carline Anderson, pursuant to 42 U.S.C § 1983, alleging violations of the Fourth and Fourteenth Amendments to the U.S. Constitution, and various state laws.[1]  (*See generally* Am. Compl., ECF No. 16.)  On April 3, 2018, the Court issued an order denying Plaintiff Alford's motion for summary judgment and granting in part and denying in part Defendants' motion for summary

---

[1] Plaintiff Alford initially filed this action on behalf of himself and J.A., his minor child.  However, on October 25, 2016, after Mr. Alford filed a motion for summary judgment, the Court appointed pro bono counsel and a *guardian ad litem* to represent the interests of J.A.  (Min. Entry, Oct. 25, 2016, ECF No. 162.)

judgment. (*See* ECF No. 213.) As a result, Plaintiff Alford's only remaining claim is a § 1983 claim asserting a violation of his constitutionally protected liberty interest in his minor child (P.A.) remaining in his custody. On July 13, 2018, the parties requested that the Court provide guidance as to the scope of damages available with respect to this remaining claim. The Court construes the parties' requests as cross motions in limine.

## DISCUSSION[2]

The City Defendants argue that Plaintiff Alford's damages are limited by New York Estates, Powers, and Trusts Law presumptions of death to three years after the date of P.A.'s disappearance.[3] (Suppl. Br. Behalf Defs.' City N.Y., Natalia Rosado, and Robert Salemi Regarding Scope Pl. Alford, Sr.'s Damages ("City Defs.' Br.") at 3-7, ECF No. 235-1.) Alternatively, the City Defendants argue that a 2012 shooting rendered Plaintiff Alford unable to care for his children, and therefore damages should be limited to the two-year period between P.A.'s removal and the date Plaintiff was injured. (*Id.* at 7-9.) Plaintiff Alford argues that no limitation whatsoever is appropriate with respect to his damages claim. (Pl. Patrick Alford, Sr.'s Mem. Scope Damages ("Pl.'s Mem.") at 4-17, ECF No. 236.) Unsurprisingly, the permissible scope of damages lies between these two extremes.

The City Defendants' reliance on New York Estates, Powers and Trusts Law—which establishes a presumption of death after three years following a disappearance—is misplaced. (*See* City Defs.' Br. at 3-7.) As an initial matter, City Defendants provide no explanation for why state law should limit the scope of damages available in a case arising from the violation of

---

[2] The Court assumes the parties' familiarity with the relevant facts of and proceedings in this matter.
[3] City Defendants also argue that New York Trusts and Estate Law permits a court to establish a date of death even earlier than three years depending on the circumstances of an individual's disappearance. (Def.'s Mem. at 5-7.) According to City Defendants, based on the circumstances of P.A.'s disappearance, the Court could find that P.A. was presumptively dead twenty-four hours after his disappearance, and therefore Plaintiff's damages could be limited to a twenty-four-hour period. (*Id.*) As set forth in greater detail, the Court does not address this argument because New York Trusts and Estate Law does not limit Plaintiff's claim for damages.

2

a constitutional right. In *Carlson v. Green*, the Supreme Court rejected a similar argument. 446 U.S. 14, 24 (1980). There, prison officials argued that Indiana state survivorship law barred a suit brought by a deceased prisoner's mother. *Id.* at 17. In rejecting this argument, the Supreme Court approvingly cited the reasoning of the Seventh Circuit Court of Appeals: "The liability of federal agents for violation [sic] of constitutional rights should not depend upon where the violation occurred." *Id.* at 24. The same reasoning applies here. Plaintiff's damages arise under federal law and therefore New York state law does not control.

Moreover, the City Defendants' argument inappropriately transposes presumptions of trusts-and-estates law onto the civil-rights context. New York's presumption-of-death statute is intended to allow for the orderly disposition of *property* rights. On its face, the New York presumption-of-death statute is limited to "any action or proceeding involving any property of such person, [or] contractual or property rights contingent upon his or her death or the administration of his or her estate." N.Y. Est. Powers & Trusts Law § 2-1.7. The presumption of death is "an artificial rule," to ensure that property "[r]ights are not . . . held in abeyance indefinitely on account of the absence of a person of whom no trace can be found . . . for the purpose of fixing the rights of those known to be living." *In re Wagener*, 128 N.Y.S. 164, 166 (App. Div. 1911).

On the facts of this case, there is no need to establish the rights of the living based on this artificial rule. This case does not involve the orderly disposition of P.A.'s physical possessions, but liability for the separation of P.A. from his father. Notably, the City Defendants have failed to identify a single federal or state court decision applying any presumption of death in the civil rights or tort context. And, at least one court in this circuit squarely rejected this very argument, by this very Defendant, in the context of tort claims. *See Greenwald v. City of New York*, No.

3

06-cv-2864, 2012 WL 6962297, at *5 (E.D.N.Y. July 19, 2012), *report and recommendation adopted,* No. 6-cv-2864, 2013 WL 354169 (E.D.N.Y. Jan. 29, 2013). It is rejected here as well.

At the same time, Plaintiff's argument—that there be no limitation whatsoever as to Plaintiff's damages—is likewise unsupported. Plaintiff Alford contends that § 1983 "is a remedial statute intended to compensate victims for the violation of their constitutional rights," and therefore, that he is entitled to damages for "the entire time period [P.A.] has been missing, as well as the reasonably foreseeable future up to and including Mr. Alford's life expectancy." (Pl.'s Mem. at 12-14.) Plaintiff is correct that § 1983 was intended to allow for the compensation of individuals for violations of their constitutional rights. *See generally Restivo v. Hessemann*, 846 F.3d 547, 585 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 644, (2018). But the scope of Plaintiff's damages is necessarily limited to the scope of the right at issue.

Plaintiff Alford asserts a violation of the constitutionally protected liberty interest in his minor child remaining in his custody. *See, e.g. Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) ("Parents . . . have a constitutionally protected liberty interest in the care, custody and management of their children."); *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000) ("We have described the interest of a parent in the custody of his or her children as 'a fundamental, constitutionally protected liberty interest.'") (quoting *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir. 1999) ("It has long been settled in this Circuit 'that a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection.'") (quoting *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir. 1992)). Plaintiff's custodial right over his child, however, is not unlimited and would necessarily extinguish when P.A. reached the age of

4

majority. That is, Plaintiff would have no custodial right over P.A. after P.A. turned eighteen.[4] While Plaintiff indisputably could maintain other relationships with his then adult child, such relationships are not protected by the constitutional right at issue here. Therefore, the Court finds that Plaintiff is entitled to seek damages for the time period beginning January 21, 2010, and ending on the date P.A. turns eighteen years old.[5]

SO ORDERED:

/s/ LDH
L aSHANN D eARCY HALL
United States District Judge

Dated: Brooklyn, New York
April 15, 2018

---

[4] While there is no federal age of majority, the Twenty-Sixth Amendment establishes a federal voting age of eighteen, U.S. Const. amend. XXVI, § 1, an individual must be eighteen years old in order to enlist in the military without parental consent, 10 U.S.C. § 505, and must enlist for the selective service upon reaching the age of eighteen, 50 U.S.C. § 3803. The Court therefore recognizes eighteen as the age of majority for the purposes of this opinion. Notably, the legal age of majority in all but three states, including New York, is also eighteen. *See http://sol-reform.com/50-state-age-of-majority-v-age-of-consent/.*

[5] While this decision limits the outer bounds of any claimed damages, it does not preclude Plaintiff from arguing that the conduct here was sufficiently shocking or egregious to justify a significant damages figure. (*See* Pl.'s Mem. at 15-17.) Nor does it preclude City Defendants from introducing evidence that, if accepted by the jury, proved that Plaintiff would have been unable to maintain custody over with P.A. following Plaintiff's 2012 shooting. (*See* Def.'s Mem. at 7-9.)